# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In re:

**117 SPENCER, LLC,**

                    **Debtor.**

**Chapter 11**

**Case No: 23-40590**

## MOTION FOR AN ORDER (1) AUTHORIZING THE USE OF CASH COLLATERAL, (2) GRANTING REPLACEMENT LIENS, (3) SCHEDULING A HEARING ON THE FURTHER USE OF CASH COLLATER, AND (4) GRANTING OTHER RELIEF
### (*Emergency Determination Requested*)

117 Spencer, LLC (the "Debtor"), the debtor and debtor-in-possession in the above captioned case, moves the Court for the entry of an order pursuant to 11 U.S.C. §§ 105 and 363, Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure, and MLBR 4001-2, authorizing the use of Cash Collateral (as that term is defined in 11 U.S.C. § 363(a)).  The Debtor requests:

(i)     The entry of an order authorizing the interim use of Cash Collateral on an emergency basis;

(ii)    The entry of a final order authorizing the use of Cash Collateral after further hearing;

(iii)   The granting of replacement liens to those creditors asserting liens on the Debtor's Cash Collateral: (1) to the same extent, priority and validity of such liens that existed as of the Petition Date (as defined below), (2) to be recognized only to the extent of any diminution in the value of the creditor's prepetition collateral arising from the Debtor's use of Cash Collateral, (3) on the same types on the same types of collateral that the creditors had valid  liens on as of the Petition Date; and

(iv)    The scheduling of a final hearing date on the use of Cash Collateral.

The Debtor owns and operates a mixed-use building with two retail units and sixteen residential apartment units that constitutes substantially all of its assets.  The relief requested is

1

necessary to preserve the value of the Debtor's ongoing operations and assets. As described

below, there is in excess of $1.6 million in equity in the Debtor's real property, and it generates

approximately $9,000 in net income each month, inclusive of debt service to the first mortgage

holder, Country Bank. The Debtor intends to continue making normal debt service payments to

Country Bank. The Debtor disputes both the claims and liens asserted by the second mortgage

holder, Resource Capital, LLC. But the equity cushion in and the positive cash flow generated

by the Debtor's real property provides ample adequate protection for any use of cash collateral.

As is described more fully below, this bankruptcy filing was caused by disputes with two

private lenders, QS Private Lending, LLC and Resource Capital, LLC. These two private lenders

made loans not to the Debtor, but to one of the Debtor's principals, Peter Venuto, and/or his

affiliated real estate development entities. The Debtor disputes all claims and liens asserted by

these two private lenders, and intends to assert affirmative claims against both of them.

Emergency determination of this motion is necessary to permit the Debtor to continue its

operations in the ordinary course of business. In support of this motion, the Debtor avers as

follows:

### JURISDICTION

1.      The Court has jurisdiction to consider and determine this motion pursuant to 28

U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND

2.      On July 21, 2023 (the "Petition Date"), the Debtor filed a petition for relief under

chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States

Bankruptcy Court for the District of Massachusetts (the "Court"). The Debtor continues to

operate its business and manage its assets as a debtor-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.

## A.      The Debtor and its Assets

3.      The Debtor is a Massachusetts limited liability company that was formed in 2019 to own and operate the real estate located at 117 Main Street, Spencer, Massachusetts (the "Property").  The Debtor has always been in the business of operating the Property, and has not had any other material business operations.  Lisa Venuto ("Ms. Venuto") and Peter Venuto ("Mr. Venuto"), who are married, collectively own 100% of the Debtor's membership interests.  Peter Venuto is the manager of the Debtor.[1]

4.      The Property is the Debtor's primary asset and consists of a mixed use building with two (2) retail units and sixteen (16) residential apartment units.  One (1) of the retail units and fifteen (15) of the residential units includes are rented, each pursuant to a lease with the Debtor.  The Debtor's tenants are all current on the rent owed to the Debtor.

5.      The Property is worth approximately $4,000,000, and is subject to two (2) mortgages (described below) that secure an aggregate amount of approximately $2,300,000, so there is substantial equity in the Property.  After paying all operating costs and debt service to the first mortgage holder, the Property generates positive income of approximately $9,000 per month.

6.      Mr. Venuto is a real estate developer and in conjunction with his business, he and/or various of his affiliated entities borrow money from various lenders.  Among the lenders Mr. Venuto borrowed money from was QS Private Lending, LLC ("QS").  In 2021, Mr. Venuto caused the Debtor to execute a deed to the Property to QS (the "Escrow Deed") in exchange for

---

[1] Mr. Venuto is currently incapacitated, and Ms. Venuto is acting on behalf of Mr. Venuto pursuant to a power of attorney.

QS executing guarantees of two loans from Country Bank, one to the Debtor and one to another corporation owned by Ms. Venuto.  The Escrow Deed was to be held in escrow by a third party until the earlier of (a) the release of QS' guarantees; (b) a default under either of the Country Bank loans; or (c) the death of Mr. Venuto.

7.      In September of 2022, Mr. Venuto needed $50,000 for a real estate development project he was building through a separate limited liability company.  Mr. Venuto borrowed the money from QS, but QS required the Debtor to be a maker on the $50,000 note (the "$50,000 Loan"), even though the Debtor did not receive any of the funds from or the benefit of the loan.

8.      In the early Spring of 2023, the relationship between Mr. Venuto and QS had soured, as a number of the real estate projects being developed by Mr. Venuto were experiencing financial issues, and QS had, ostensibly, loaned money to various of those projects.  QS claimed that the $50,000 Loan was in default.

9.      QS somehow obtained the Escrow Deed and, although none of the conditions for recordation of the Escrow Deed had occurred, QS recorded the Escrow Deed on April 24, 2023.  The Debtor attempted to resolve its outstanding issues and requested that QS voluntarily re-convey the Property, but QS refused to do so and the Debtor was required to file this chapter 11 case in order to preserve, among other things, the ability to seek the avoidance of the transfer of the Property to QS under chapter 5 of the Bankruptcy Code.  In addition to causes of action under chapter 5 of the Bankruptcy Code, the Debtor believes that it has, among others, claims against QS under Massachusetts General Laws chapter 93A.

B.     **Secured Claims**

     i.     <u>Country Bank Secured Claim/Real Estate Taxes</u>.

     10.     The Debtor obtained a loan of approximately $2,200,000 from Country Bank in order to acquire the Property, and granted Country Bank a mortgage on the Property to secure the repayment of that loan.  As of the Petition Date, Country Bank is owed approximately $2,100,000.  The Debtor is current on its debt service payments to Country Bank, and does not believe there is a basis to challenge Country Bank's claims against the Debtor or its lien on the Property.  Country Bank may assert an interest in the Debtor's Cash Collateral.

     11.     As part of its loan from Country Bank, the Debtor contributes monthly amounts to a real estate tax escrow held by Country Bank.  While the Debtor may owe real estate taxes that have accrued in the ordinary course of business, there are amounts escrowed with Country Bank to pay those accrued real estate taxes.

     ii.     <u>Resource Capital Alleged Secured Claim</u>.

     12.     In mid-2022, Peter Venuto borrowed $200,000 from William Depietri.  Mr. Venuto received all of the funds from the loan individually.  In January of 2023, William Depietri demanded that his loan to Mr. Venuto be memorialized by a $225,000 promissory note (the "<u>136 Spencer Note</u>") from 136 Spencer, LLC, a limited liability company owned by Mr. Venuto, to Resource Capital, LLC ("<u>Resource</u>"), a limited liability company owned or controlled by William Depietri.  Even though the Debtor did not receive any of the funds from or the benefit of the $200,000 loan, William Depietri also required the Debtor to guaranty the obligations under the 136 Spencer Note (the "<u>Guaranty</u>") and to secure the Guaranty with a mortgage on the Property.  The 136 Spencer Note and the Guaranty were executed on January 27, 2023.  On February 10, 2023, just fourteen (14) days later, Resource declared a default under

the 136 Spencer Note.  The Debtor believes that the Guaranty and its accompanying mortgage

are avoidable under chapter 5 of the Bankruptcy Code.  In addition to causes of action under

chapter 5 of the Bankruptcy Code, the Debtor believes that it has, among others, claims against

Resource under Massachusetts General Laws chapter 93A.

13.     Resource may assert an interest in the Debtor's cash collateral.

**C.     Unsecured Debt**

14.     The Debtor does not have employees – the maintenance and operation of the

Property are accomplished through vendors and independent contractors – and the Debtor

therefore does not believe that there are any priority unsecured claims against the Debtor.

15.     The Debtor is current on the payment of its trade debts.  Except for any disputed

non-priority unsecured claim asserted by QS, the Debtor's only non-priority unsecured debt

consists of trade debts that have accrued in the ordinary course of business.

<strong>Requested Use of Cash Collateral</strong>

**A.     Cash Collateral.**

16.     The Debtor requires the use of Cash Collateral to pay the expenses necessary to

maintain and preserve the value of the Property.  Attached Exhibit A is a budget for the Debtor's

operations (the "Budget") for the period between the Petition Date and September 30, 2023 (the

"Budget Period").  The Budget sets forth the Debtor's estimated receipts and disbursements for

the Budget Period.  The Budget shows that, during the Budget Period, the Debtor's Cash

Collateral is sufficient to pay the ordinary course expenses necessary to maintain and insure the

Property, including post-petition real estate taxes.

17.     The Debtor requests the authority to use Cash Collateral to fund its operations

during the Budget Period.  The use of Cash Collateral will enable the Debtor to pay to preserve

the value of its operations and assets pending a sale of the Property and the payment, based on

the current proposed sale price, of creditors in full.  Absent the use of Cash Collateral, the Debtor

would be required to cease operations, resulting in, among other things, the forced liquidation of

its assets and a materially reduced return to creditors.  Permitting the Debtor to use Cash

Collateral is therefore in the best interests of the Debtor, its bankruptcy estate and creditors.

**B.**      **Adequate Protection.**

18.      Section 363(e) of the Bankruptcy Code provides that a party with an interest in

property proposed to be used, sold or leased by a debtor must receive adequate protection for

such interest before the debtor may use, sell or lease such property.  *See* 11 U.S.C. § 363(e).

19.      Section 361 of the Bankruptcy Code provides that when adequate protection is

required under Section 363 of the Bankruptcy Code, such adequate protection may be provided

by, *inter alia,* "providing to such entity an additional or replacement lien to the extent that such

stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such

property." 11 U.S.C. § 361(2).

20.      The entitled to and measure of the protection required is always determined by the

extent of the anticipated or actual decrease, if any, in the value of the secured creditor's collateral

during course of the bankruptcy case.  *See In re First South Savings Assoc.*, 820 F.2d 700, 710

(5th Cir.1987).  Adequate protection requires only that the value of the creditor's interest in the

cash collateral be protected from diminution while the debtor is using the cash collateral.  *See*

*United Savings Association of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365

(1988).

21.      The Debtor will provide adequate protection for the use of Cash Collateral by

continuing to preserve the value of its assets and by the replacement liens (described below).

7

The Debtor's continued operations will permit it to maintain and preserve the value of its assets, without which such value will dramatically decline. This continued preservation of the value of the Debtor's assets provides the Debtor's secured creditors with adequate protection for the use of Cash Collateral. *See Baybank-Middlesex v. Ralar Distributors*, 69 F.3d 1200, 1203 (1st Cir. 1995). Moreover, the Debtor intends to continue its normal debt service payments to Country Bank, which provides additional adequate protection to any secured creditors.

22.     The Debtor also propose to grant to Country Bank, and any other secured creditors that the Court determines have an interest in the Cash Collateral, replacement liens (the "Replacement Liens") on the same types of post-petition property of the estate against which such creditors held liens as of the Petition Date, without prejudice to the Debtors' rights to contest the amount, validity, priority and extent of any liens or claims asserted by such secured creditors. The Replacement Liens shall maintain the same priority, validity and enforceability as the secured creditors' pre-petition liens (if any). The Replacement Liens shall only be recognized to the extent of the diminution in value of the secured creditors' prepetition collateral after the Petition Date resulting from the Debtor's use of the Cash Collateral during this case.

23.     The value of the Property exceeds the amount of its indebtedness by approximately $1,700,000. This "equity cushion" is another recognized form of adequate protection of the interests of secured creditors, justifying the use of cash collateral under Sections 362 and 363 of the Bankruptcy Code. *See Baybank-Middlesex*, 69 F.3d at 1203 (citing *First Agric. Bank v. Jug End in the Berkshires*, 46 B.R. 892, 899 (Bankr. D. Mass. 1985)); *see also In re SW Boston Hotel Venture LLC*, 449 B.R. 156, 176 (Bankr. D. Mass. 2011) ("If collateral securing a claim has value greater than the interest of the secured claim holder, the excess value,

8

referred to as an equity cushion, constitutes adequate protection for the secured party's

interest.").

24.     The Debtor will provide the following reporting, monthly, to each creditor that

asserts a lien on the Debtor's asserts: (a) a budget to actual report with respect to the Budget, and

(b) a copy of each Debtor's monthly operating report submitted to the Office of the United States

Trustee.  Such reporting will be provided on the twentieth (20th) day of each month for the

preceding calendar month.

### NOTICE

25.     The Debtor will serve this motion and notice of any hearing of such motion upon

any entity known by the Debtor to assert liens on or security interest in any of the Debtor's

assets, the Debtor's twenty largest unsecured creditors, the Office of the United States Trustee,

relevant federal and state taxing authorities, and any party requesting notice in this proceeding.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE,** the Debtor requests that the Court enter an order, substantially in the form attached as Exhibit B: (a) granting this motion; (b) authorizing the Debtor's use of Cash Collateral as requested; (c) granting the Replacement Liens; (d) scheduling a final hearing on the use of Cash Collateral; and (e) granting the Debtor such other and further relief as is necessary and proper under the circumstances.

Respectfully submitted,

117 SPENCER, LLC
By its proposed counsel,

/s/ *D. Ethan Jeffery*
D. Ethan Jeffery (BBO #631941)
Leah A. O'Farrell (BBO #708424)
Murphy & King, P.C.
28 State Street, Suite 3101
Boston, MA  02109
Tel.: (617) 423-0400
E-mail: ejeffery@murphyking.com
E-mail: lofarrell@murphyking.com

Dated: July 21, 2023

**EXHIBIT A**

[Proposed Budget]

**117 Spencer, LLC**
**Cash Collateral Budget**

| Income | | | July 2023 | August 2023 | Sept. 2023 |
|---|---|---|---|---|---|
| | Unit 1 | Lucy Santos | $ 1,550 | $ 1,550 | $ 1,550 |
| | Unit 2 | Alexis Kunesch | $ 1,625 | $ 1,625 | $ 1,625 |
| | Unit 3 | Donovan Plante | $ 1,450 | $ 1,450 | $ 1,450 |
| | Unit 4 | Morgan Kunesch | $ 1,450 | $ 1,450 | $ 1,450 |
| | Unit 5 | Anthony Bertini | $ 1,350 | $ 1,350 | $ 1,350 |
| | Unit 6 | Yariam & Jefferson | $ 1,400 | $ 1,400 | $ 1,400 |
| | Unit 7 | Julissa Jeisel | $ 1,600 | $ 1,600 | $ 1,600 |
| | Unit 8 | Carmen Huertas | $ 1,425 | $ 1,425 | $ 1,425 |
| | Unit 9 | Vacant | $ - | $ - | $ - |
| | Unit 10 | Peter & Nancy | $ 1,550 | $ 1,550 | $ 1,550 |
| | Unit 11 | Jessica & Jesus | $ 1,450 | $ 1,450 | $ 1,450 |
| | Unit 12 | Daniel Roman | $ 1,250 | $ 1,250 | $ 1,250 |
| | Unit 13 | Alan Cramer | $ 1,625 | $ 1,625 | $ 1,625 |
| | Unit 14 | Rosalie Tirella | $ 1,450 | $ 1,450 | $ 1,450 |
| | Unit 15 | Joan | $ 1,400 | $ 1,400 | $ 1,400 |
| | Unit 16 | Rosita Gomez | $ 1,400 | $ 1,400 | $ 1,400 |
| | | Laundry Machines | $ 400 | $ 400 | $ 400 |
| | Retail 1 | Mexicali Restaurant | $ 5,500 | $ 5,500 | $ 5,500 |
| | Retail 2 | Vacant | $ - | $ - | $ - |
| **Total Income** | | | $ 27,875 | $ 27,875 | $ 27,875 |
| **Expenses** | | | | | |
| | | Real Estate Taxes* | $ - | $ - | $ - |
| | | Water & Sewer | $ 1,061 | $ 1,061 | $ 1,061 |
| | | Insurance | $ 1,375 | $ 1,375 | $ 1,375 |
| | | Gas | $ 508 | $ 508 | $ 508 |
| | | Electric | $ 694 | $ 694 | $ 694 |
| | | Elevator | $ 417 | $ 417 | $ 417 |
| | | Spectrum | $ 300 | $ 300 | $ 300 |
| | | Lobby Rug Service | $ 196 | $ 196 | $ 196 |
| | | Fire Alarm | $ 40 | $ 40 | $ 40 |
| | | R&M | $ 583 | $ 583 | $ 583 |
| | | Management Fee | $ 1,000 | $ 1,000 | $ 1,000 |
| | | Country Bank (P&I and RE Taxes) | $ 12,870 | $ 12,870 | $ 12,870 |
| **Total Expenses** | | | $ 19,044 | $ 19,044 | $ 19,044 |
| | | | | | |
| **Net Income** | | | $ 8,831 | $ 8,831 | $ 8,831 |

\* Real estate taxes are escrowed with Country Bank, and are therefore included in the monthly payment
  to Country Bank.

**EXHIBIT B**

[Proposed Interim Order]

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In re:

**117 SPENCER, LLC,**

                    **Debtor.**

**Chapter 11**

**Case No: 23-40590**

### [PROPOSED] INTERIM ORDER GRANTING MOTION FOR AN ORDER (1) AUTHORIZING THE USE OF CASH COLLATERAL, (2) GRANTING REPLACEMENT LIENS, (3) SCHEDULING A HEARING ON THE FURTHER USE OF CASH COLLATERAL, AND (4) GRANTING OTHER RELIEF

This matter having come before the Court on the *Motion for an Order (1) Authorizing the Use of Cash Collateral, (2) Granting Replacement Liens, (3) Scheduling a Hearing on the Further Use of Cash Collateral, and (4) Granting Other Relief* (the "Cash Collateral Motion") filed on July [●], 2023, by 117 Spencer, LLC (the "Debtor"), the debtor and debtor-in-possession in the above captioned case; and the Court having considered the Cash Collateral Motion, the Affidavit of Lisa Venuto in Support of the Cash Collateral Motion, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on

_____, 2023 (the "Interim Order"); and notice of the Interim Hearing having been given in accordance with Rules 2002, 4001(b), (c), and (d), and 9014 of the Federal Rules of Bankruptcy Procedure and MLBR 4001-2(b); and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Cash Collateral Motion having been withdrawn, resolved, or overruled by the  Court; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtor and its estate pending a final hearing on the use of Cash Collateral, and otherwise is fair and reasonable, in the best interests of the Debtor, its estate, and its creditors and equity holders, and is essential for

1

the maximization of the value of the Debtor's business and assets; and after due deliberation and

consideration, and for good and sufficient cause appearing therefor;

## THE COURT HEREBY MAKES THE FOLLOWING PRELIMINARY FINDINGS

A.       On July 21, 2023 (the "Petition Date"), the Debtor filed a voluntary petition with

this Court for relief under chapter 11 of the Bankruptcy Code.  The chapter 11 case filed by the

Debtor is referred to in this order as the "Case".

B.       The Debtor continues to operate its business and manage its assets as a debtor-in-

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee has been

appointed in the Case.

C.       This Court has jurisdiction over these proceedings, and the persons and properties

affected hereby, pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C.

§§ 1408 and 1409 and L.R., D. Mass. 201.  The Cash Collateral Motion is a core proceeding

pursuant to 28 U.S.C. § 157(b).

D.       As of the date of this order, the United States Trustee for the District of

Massachusetts (the "U.S. Trustee") has not appointed an official committee of unsecured

creditors in the Case pursuant to section 1102 of the Bankruptcy Code (a "Creditors'

Committee").

E.       The Debtor requested entry of this order pursuant to Federal Rule of Bankruptcy

Procedure 4001(b)(2).  The Debtor has an immediate need to use Cash Collateral to, among other

things, preserve and maximize the value of its assets, absent which the Debtor, its estate and its

creditors will suffer immediate and irreparable harm.  The preservation and maintenance of the

Debtor's assets and business is necessary to maximize the value of its assets.  Absent the

Debtor's ability to use Cash Collateral, the Debtor would not have sufficient available sources of

working capital or financing and would be unable to pay its operating expenses or maintain its

assets, to the detriment of the Debtor's estate and creditors.  The relief requested in the Motion

and granted in this order is, therefore: (i) critical to the Debtor's ability to maximize the value of

its chapter 11 estate, (ii) in the best interests of the Debtor, its estate and creditors, and (iii)

necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtor and

its assets.  This order and all of its terms meet the standard for interim relief set forth in MBLR

4001-2(e)(2).

      F.     The following entities (collectively the "Secured Creditors") may assert liens on

the Debtor's assets and may assert and an interest in the Debtor's Cash Collateral: (i) Country

Bank and (ii) Resource Capital.

      G.     Attached to the Cash Collateral Motion is a budget (the "Budget") for the use of

Cash Collateral.

      H.     The Debtor has caused notice of the Cash Collateral Motion and the Interim

Hearing to be served by facsimile, email, overnight courier, or hand delivery on the following

parties (collectively, the "Notice Parties"): (i) the U.S. Trustee; (ii) holders of the twenty (20)

largest unsecured claims against the Debtor; (iii) any entity known by the Debtor to assert liens

on or security interests in any of the Debtor's assets; (iv) the Internal Revenue Service; (v) the

Massachusetts Department of Revenue; and (vi) all parties who have filed a notice of appearance

and request for service of papers pursuant to Bankruptcy Rule 2002.  Under the circumstances,

the notice given by the Debtor of the Cash Collateral Motion and the Interim Hearing complies

with Bankruptcy Rules 2002, 4001(b), (c), and (d) and MBLR 4001-2(b).

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Cash Collateral Motion.

2.      The Cash Collateral Motion is granted on an interim basis as set forth in this order. Any objections to the Cash Collateral Motion, to the extent not withdrawn or resolved, are hereby overruled.

3.      The Debtor is authorized to use Cash Collateral substantially in accordance with the Budget through and including _____, 2023 (the "Interim Period").

4.      For the purposes of Sections 361, 363(e) and 507(b) of the Bankruptcy Code, and as adequate protection to the Secured Creditors for the Debtor's use of Cash Collateral, the Secured Creditors are granted replacement liens (the "Replacement Liens") on the same types of post-petition property of the Debtor's estates against which the Secured Creditors held liens as of the Petition Date.  The Replacement Liens shall maintain the same priority, validity and enforceability as the Secured Creditors' respective pre-petition liens.  The Replacement Liens shall be recognized only to the extent of the post-petition diminution in value of the Secured Creditors' pre-petition collateral resulting from the Debtor's use of the Cash Collateral.

5.      The Replacement Liens shall not attach to any avoidance powers held by any of the Debtor or any trustee for the Debtor, including those avoidance powers set forth in Sections 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, or to the proceeds of any claims under or actions commenced pursuant to such powers.

6.      Commencing on August __, 2023, and continuing thereafter on the twentieth (20th) day of each successive month, the Debtor shall provide the following reporting to each

4

Secured Creditor: (a) a budget to actual report with respect to the Budget, and (b) a copy of the Debtor's monthly operating report filed with the Court.

7.      Nothing in this order shall constitute a waiver by or restrict the right of the Debtor to seek the further use of Cash Collateral.

8.      This Court has not been asked to find, and it does not find, that any asserted security interest or lien is valid or perfected.  Nothing contained in this order is intended, or shall be deemed, to be a ruling on the extent or validation of any creditor's asserted security interest, lien or claim.

9.      A continued hearing on the Debtor's request for entry of the Final Order is scheduled for _____, 2023, at __:___ _.m. (prevailing Eastern Time) before this Court.  Within three (3) business days after entry of this order, the Debtor shall serve, or cause to be served, by first class mail or other appropriate method of service, a copy of this order on the Notice Parties.  Any responses or objections to the Cash Collateral Motion shall be made in writing, conform to the applicable Bankruptcy Rules and the local rules of this Court, be filed with the Bankruptcy Court, set forth the name of the objecting party, the basis for the objection, and the specific grounds therefor, and be served so as to be actually received no later than _____, 2023, at 4:30 p.m. (prevailing Eastern time) by the following parties: (a) counsel for the Debtor, D. Ethan Jeffery, Murphy & King, P.C., 28 State Street, Suite 3101, Boston, MA 02109; (b) the U.S. Trustee and (c) those Parties requesting Notice in accordance with the applicable rules of procedure.

10.     Notwithstanding any applicability of any Bankruptcy Rules, the terms and conditions of this order shall be immediately effective and enforceable upon its entry.

5

11.     The Court has and will retain jurisdiction and power to enforce this order in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this order.


BY THE COURT


_____
United States Bankruptcy Judge

Dated: July __, 2023