UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

|  |  |  |
|---|---|---|
| In Re: | ) ) ) | |
| 117 SPENCER, LLC | ) ) | Chapter 11<br>Case No. 23-40590-EDK |
| Debtor | ) ) ) | |

# OBJECTION OF COUNTRY BANK FOR SAVINGS TO DEBTOR'S DISCLOSURE STATEMENT WITH RESPECT TO JOINT PLAN OF REORGANIZATION OF 117 SPENCER, LLC AND 136 SPENCER, LLC

## INTRODUCTION:

COUNTRY BANK FOR SAVINGS (the "Bank"), the holder of a valid, enforceable and duly perfected first mortgage on the property located at 117 Main Street, Spencer, MA (the "Property") granted to it by 117 Spencer, LLC (the "Debtor"), files this Objection to the Debtor's Disclosure Statement with respect to Joint Plan of Reorganization of 117 Spencer, LLC and 136 Spencer, LLC dated November 17, 2023 (the "Disclosure Statement") (Dkt. #69). The Court should deny approval of the Disclosure Statement on the grounds that is lacks adequate information to permit creditors to make an informed judgment on whether to vote in favor of or against the Joint Plan of Reorganization of 117 Spencer, LLC and 136 Spencer, LLC (the "Joint Plan") (Dkt. 68), and for the further reason that the Joint Plan described by the Disclosure Statement is not confirmable under section 1129 of the Code.

The Debtor filed this case as a "single asset real estate" case within the meaning of section 101(51B) of the Code even though it does not hold record title to the Property. The Joint Plan is predicated on a proposed settlement agreement by and among the Debtor and QS Private Lending, LLC ("QS"), its sole member, Steven Ross ("Ross"), and Steven A. Ross, Trustee of

033068/0125/4870-3247-7330.2

QS Lending Trust (collectively referred to as the "Ross-related Entities") that provides, among other things, for the reconveyance of the Property from QS to the Debtor and an exchange of releases. Prior to the commencement of this bankruptcy case in April 2023 QS had improperly recorded a deed to the Property that it held in escrow under a putative Escrow Agreement notwithstanding the absence of any event of default under that agreement. On October 11, 2023, this Court entered an Order (Dkt. #57) denying without prejudice the Debtor's Motion to Approve a settlement with Ross and QS on the ground that the settlement failed to meet the minimum threshold of reasonableness required by Federal Rule of Bankruptcy Procedure 9019. Rather than sue QS to recover the Property and significant money damages, the Debtor filed the Joint Plan that incorporates the previous settlement agreement rejected by this Court.

The Court should deny approval of the Disclosure Statement on the grounds that is lacks adequate information to permit creditors to make an informed judgment on whether to vote in favor of or against the Joint Plan. As set forth below, the Disclosure Statement fails to accurately describe the Debtor's obligations to the Bank under the Bank's loan documents; fails to provide a copy of the Plan Settlement Agreement with the Ross-related entities; fails to explain the terms and circumstances of the Debtor's Escrow Agreement with QS; fails to explain the reasons that the Debtor became a co-maker on a loan QS made to E.W. Woods, Inc that gives rise to a claim of $406,103.55 to which the Debtor has not objected; inaccurately describes the terms of the E.W. Woods loan by incorrectly identifying the lender and role of the Debtor; inaccurately describes the closing of the Country Bank for Savings financing in May of 2021; and fails to address the alleged reversionary interest to the Property claimed by the Town of Spencer, Massachusetts. The Bank further objects to the Disclosure Statement on the ground that

2

the Joint Plan described by the Disclosure Statement is not confirmable under Section 1129of the Code.

## FACTUAL BACKGROUND:

1. On July 21, 2023, the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Court, District of Massachusetts.

2. The Debtor continues to operate as a debtor-in-possession under Sections 1107(a) and 1108 of the United States Bankruptcy Code (the "Code").

3. On September 7, 2023, the Debtor filed the Motion to Approve the Settlement Agreement and proposed DIP Financing.

### The Bank's Loan Documents:

4. On May 18, 2021, the Bank and Debtor entered into a Loan Agreement for the extension of credit in the amount of $2,200,000.00 the (the "Loan Agreement") as evidenced by a Commercial Promissory Note in the original principal amount of $2,200,000.00 dated May 18, 2021 (the "Note"). The Bank's loan to the Debtor was a refinancing of a then-existing loan from QS to the Debtor.

5. As security for the obligations under the Note, the Debtor granted a Mortgage on property located at 117 Main Street, Spencer, Massachusetts (the "Property") to the Bank recorded at the Worcester District Registry of Deeds (the "Registry") in Book 65200, Page 2 (the "Mortgage"). As further security for the obligations under the Note, the Borrower granted a security interest in substantially all of its personal property by executing a written Security Agreement dated May 18, 2021 (the "Security Agreement"), which security interest was perfected by the filing of UCC-1 Financing Statements with the Massachusetts Secretary of State's Office on May 24, 2021 (Filing No. 202177655290). The obligations are further secured

by an Assignment of Leases and Rent on the Property recorded at the Registry at Book 65200, Page 21 (the "Assignment of Leases and Rents").

6. As further security for the obligations under the Note, Ross, the sole owner of QS, and Peter Venuto, each executed an Unlimited Guaranty of the Obligations dated May 18, 2021 (the Note, the Mortgage, Security Agreement, Assignment of Leases and Rents, the Ross Guaranty and the Venuto Guaranty are collectively referred to as the "Loan Documents").

**The Debtor's Proposed Settlement with Ross and QS Private Lending, LLC**:

7. Upon the filing of the Debtor's bankruptcy case the Bank learned that Ross, by and through QS, induced the Debtor to transfer title to the Property to QS in consideration of less than $100.00 as evidenced by a deed dated July 26, 2021 recorded at the Registry on April 24, 2023 in Book 69052, Page 148.

8. On September 7, 2023, the Debtor filed a Motion For (A) Approval of Settlement, (B) Approval of Debtor-in-Possession Financing, and (C) Additional Relief that proposed to pay QS $65,000 in exchange for a return of the Property and an exchange of releases (the ("Settlement Motion") (Dkt. #31). The Bank and the Office of the United States Trustee filed separate Objections to the Settlement Motion (Dkt # 32 and 39, respectively) on the grounds that court approval of the Settlement Motion would reward QS and Ross for their pattern of misconduct described in the Objections.

9. On October 11, 2023, the Court entered an Order denying the Settlement Motion without prejudice.

10. On November 17, 2023, the Debtor filed the Disclosure Statement and Joint Plan.

**ARGUMENT**:

**The Court Should Deny Approval of the Disclosure Statement For Failing to Contain Adequate Information to Permit Creditors to Make an Informed Judgment About the Plan.**

11.     Under section 1125 of the Code, a disclosure statement may only be approved if the court determines it contains "adequate information" which is defined as "information of a kind, an in sufficient detail, as far as reasonably practicable in light of the nature and history of the debtor rand the condition of the debtor's books and records….that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan…" Section 1125(a)(1).

12.     A proper disclosure statement must be "clear and comprehensible." In re Ferretti, 128 B.R. 16, 19 (Bankr. D.N.H. 1991), and like all communications soliciting acceptances and rejections, it must be accurate and truthful. See, Id. at 20, citing In re Media Central, Inc., 89 B.R. 685 (Bankr. E.D. Tenn. 1988), In re Gulph Woods Corp, 83 B.R. 339 (Bankr. E.D. Pa. 1988).

13.     The Disclosure Statement in this case provides insufficient information for creditors to make an informed decision about the Plan and, therefore, fails to meet the threshold for approval under section 1125 of the Code. See. Century Glove, Inc. v. First American Bank of New York, 860 F.2d 94, 100 (3rd Cir. 1988).

14.     The Disclosure Statement contains insufficient, inadequate, or misleading information on the relevant facts leading up to the Debtor's bankruptcy filing and the of the relationships by and among the Debtor, Peter Venuto, Lisa Venuto, QS, its various affiliates, Steven Ross, and E.W. Woods, Inc.. that permit creditors to make an informed judgment about the Joint Plan. The insufficient, inadequate, or misleading information include the following:

5

    a.    <u>Inaccurate Description of the Debtor's Obligations to the Bank Under the Loan Documents</u>: the Disclosure Statement inaccurately sets forth the Debtor's obligations to the Bank under the Debtor's loan documents by asserting that the Debtor is obligated to make only payments principal and interest to the Bank.  <u>See</u> <u>Disclosure Statement</u> (Country Bank For Savings Claim - <u>Sec 6.7</u>).  The Disclosure Statement and Joint Plan must provide for the Debtor to satisfy **all obligations** under its loan documents with Country Bank, including but not limited to unpaid principal, accrued interest, escrows for taxes, and other charges and fees, including attorneys' fees and costs).[1]

    b.    <u>Failure to Provide Copy of the Plan Settlement Agreement With the Ross Entities</u>: the Disclosure Statement fails to provide a copy of the "Plan Settlement Agreement" between the Debtor and the Ross Entities.  <u>See Disclosure Statement (Section 4.2, p. 10)</u>.[2]

    c.    <u>Inadequate Explanation of the QS Escrow Agreement and Recording of Deed</u>: the Joint Plan described by the Disclosure Statement is based on a settlement by and among the Debtor, the Debtor's principals, and the Ross-related Entities that was previously rejected by the Court for failing to satisfy the lowest level of reasonableness under Rule 9019; the Joint Plan resurrects the rejected settlement but provides no further explanation (or justification) for Ross's wrongful recordation of the deed other than stating that "QS *somehow* obtained the Escrow Deed…"  <u>See</u>, <u>Disclosure Statement</u>, Section 4.1, p. 8 (emphasis added).  The explanation insufficient context to permit creditors to make an informed judgment about the Joint Plan.  [3]

    d.    <u>Inadequate Explanation of the Debtor's Relationship with E.W. Woods, Inc</u>:  The Disclosure Statement states that QS somehow **"required"** the Debtor to secure a mortgage loan that Steven A. Ross, Trustee of QS Lending Trust made to E.W. Woods, Inc. notwithstanding that the Disclosure Statement concedes that neither the Debtor nor Peter Venuto ever had any financial interest in or to E.W. Woods, Inc.  <u>See</u>, <u>Disclosure Statement</u>, Section. 4.2, p. 10.  The lack of any further information or background is inadequate to permit creditors to properly understand the parties' relationship or to make an informed judgment about the Joint

---

[1] During the parties' conference on January 2, 2024 Debtor's counsel informed counsel to the Bank that he would amend the Joint Plan to address this Objection but that the Debtor has asked its counsel to object to the Bank's legal fees set forth in the Bank's Proof of Claim dated December 19, 2023, Claim #3.

[2] During the parties' conference on January 2, 2024 Debtor's counsel informed counsel to the Bank that he would file a copy of this document with the Court.

[3] During the parties' conference on January 2, 2024 Debtor's counsel informed counsel to the Bank that he has no further information on this topic.

6

Plan.[4]

e. <u>Inaccurate Description Of the Loan to E.W. Woods, Inc.</u>: The Disclosure Statement is both inaccurate and confusing in its description of the loan made to E.W. Woods, i.e. the so-called "Wood Loan." <u>See</u>, <u>Disclosure Statement</u>, Section. 4.2, p. 10 (first full paragraph). The Disclosure Statement incorrectly identifies the Lender on that loan as "QS" (the lender was "Steven A. Ross, Trustee of QS Lending Trust").[5] The Disclosure Statement further incorrectly identifies the Debtor as a guarantor when the instrument shows that it was a <u>co-maker</u> of the $350,000 Promissory Note.[6]

f. <u>Inaccurate Description Of the Country Bank For Saving Loan in May 2021.</u>: The Disclosure Statement is materially inaccurate. <u>See</u>, <u>Disclosure Statement</u>, Section. 4.2, p. 10 (fifth full paragraph). This paragraph of the Disclosure Statement states that at the May 2021 closing QS received payment of the "Original Loan" of $1,900,000 and the "Wood Loan" of $350,000. That is false. Rather, QS received a payoff of the "**Original Loan**" of $1,900,000 and the so-called "**New Loan**" of $210,000.[7]

In May 2021, the Bank received payoff letters from the QS on behalf of Steven A. Ross, Trustee of QS Lending Trust for the $1.9M "Original Loan" and the $210,000 "New Loan." <u>See</u>, <u>Disclosure Statement</u>, Section. 4.2, p. 10 (fifth full paragraph). In reliance on those payoff letters the Bank remitted payment by wire transfer on May 19, 2021 $1,987,895.37 on the Original $1,900,000 loan and an additional $213,050 on the $210,000 "New Loan." Based on those wire transfers and the legal obligation of QS to file a discharge, the Bank obtained a Title Insurance Policy from Chicago Title dated May 5, 2021 that insured the Bank's mortgage as a first mortgage on the Property. Steven A. Ross, Trustee of QS Lending Trust, violated Massachusetts General Laws Chapter 183, Section 55 by failing to record a discharge of its mortgage on the Property within 45 days of its receipt of payment of the above funds on May 19, 2021.

g. <u>Failure to Explain the Alleged Reversionary Interest Claimed by the Town of Spencer, Massachusetts</u>: The Town of Spencer, Massachusetts has filed a Proof of Claim (Claim #2) in the amount of $4,000,000 that claims a

---

[4] During the parties' conference on January 2, 2024 Debtor's counsel informed counsel to the Bank that the Debtor has no further explanation of the reasons that the Debtor incurred this obligation other than the fact they have a business relationship.

[5] On December 6, 2023 "Steven A. Ross, Trustee of QS Lending Trust, filed a Proof of Claim for amounts owed under the Wood Loan in the amount of $406,103.55.

[6] During the parties' conference on January 2, 2024 Debtor's counsel informed counsel to the Bank that he would amend these provisions.

[7] The "New Loan" is described in the Disclosure Statement, Section. 4.2, p. 10 (second full paragraph).

7

033068/0125/4870-3247-7330.2

reversionary interest in the Property based on the Debtor's alleged failure to complete renovations to the Town's satisfaction. The Disclosure Statement will need to be amended to identify any communications between the Town and the Debtor on this issue, the parties' respective legal arguments, the Debtor's assessment of the relative merits of the parties' legal arguments, and the nature and timing of adjudicating the Town's claim.[8]

## The Court Should Deny Approval of the Disclosure Statement on the Ground That The Joint Plan Described by the Disclosure Statement is Not Confirmable

15. The Court should deny approval of the Disclosure Statement because the Joint Plan is unconfirmable in its current form. It is well established that a hearing on a motion to approve a disclosure statement is an appropriate time for a court to consider whether the plan described by the disclosure statement is confirmable. In re Bjolmes Realty Trust, 134 B.R. 1000, 1002 (Bankr. D. Mass. 1991) ("[i]t is permissible … for the court to pass upon confirmation issues where, as here, it is contended that the plan is so fatally and obviously flawed that confirmation is impossible."). Numerous other cases recognize this important principle of bankruptcy law. See, e.g., In re Mahoney Hawkes, LLP, 189 B.R. 285, 294 (Bankr. D. Mass. 2002); In re Phoenix Petroleum Co., 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001); In re Curtis Ctr. Ltd. P'ship, 195 B.R. 631, 638 (Bankr. E.D. Pa. 1996); In re Dakota Rail, Inc., 104 B.R. 138, 143 (Bankr. D. Minn. 1989); In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988); In re 266 Washington Assocs., 141 B.R. 275, 288 (Bankr. E.D.N.Y 1992); In re Eastern Main Elec. Coop., Inc., 125 B.R. 329, 333 (Bankr. D. Me. 1991).

16. The Court should deny approval of the Disclosure Statement because the Plan is not confirmable. The substantive defects of the Plan are discussed in detail below, but include:

---

[8] The Town's Proof of Claim was filed on November 30, 2023, two weeks after the Disclosure Statement. During the parties' conference on January 2, 2024 Debtor's counsel informed counsel to the Bank that he believes that we can resolve the Town's claim.

(1) that the Joint Plan impermissibly modifies the Bank's loan documents; (2) lack of good faith within the meaning of section 1129(a)(3) of the Code, (3) the impermissible artificial impairment of claims that is designed to obtain the acceptance of an impaired class of creditors under section 1129(a)(10) of the Code; and the improper separate classification of the Ross/QS claim also designed to obtain the acceptance of an impaired class of creditors.

### I.     **The Plan Impermissibly Modifies the Bank's Loan Documents:**

17.     The Disclosure Statement and Plan impermissibly modify the Bank's loan documents.  **Class 3, Section 6.7(e)** of the Disclosure Statement provides that as of the Effective Date:

> …Country Bank's Loan Documents shall be deemed amended and restated, without further action, as necessary to reflect and incorporate the terms of the Plan.  To the extent that Country Bank's Loan Documents contain any terms, covenants, representations and warranties, and/or remedies that impose obligations upon the Debtors *that are inconsistent with or more expansive than the terms of the Plan*, such terms, covenants and representations and warranties, and or remedies are deemed cancelled…and shall be discharged on the Effective Date. *(emphasis added)*.

The Bank objects to the Disclosure Statement's language that vitiates the fundamental protections that induced the Bank to enter into the financing that are indeed **"*inconsistent with or more expansive*"** than the Plan, including but not limited to the Debtor's obligations under its loan documents to:

a.     Furnish updated financial information to the Bank (Loan Agreement, §6(h);

b.     Comply with financial covenant ratios (Loan Agreement, §7(a)-(c));

c.     Maintain its operating account at the Bank(Loan Agreement, §6(j));

d.     Not merge or consolidate with another entity (Loan Agreement, §6(n))

e.     Not to sell or transfer any legal or beneficial interest in the Mortgaged Property (Loan Agreement, §6(b));

9

  f.  Not grant junior liens on the Property (<u>Loan Agreement</u>, §8(f));

  g.  Acknowledge the Bank's rights and remedies, including rights of setoff (<u>Loan Agreement</u>, §13.

More broadly, the Bank objects to <u>any provision</u> of the Disclosure Statement and Joint Plan that intends to limit or restrict any of the Debtor's Covenants (Loan Agreement, Section 6), Financial Covenants (Loan Agreement, Section 7), or Representations and Warranties (Loan Agreement, Section 8).[9]

  18.  The Disclosure Statement further seeks to impermissibly modify and extend grace periods under the Bank's loan documents. The Disclosure Statement impermissibly imposes a by imposing a 20 day grace period for any post-confirmation payment defaults and a 40 day grace period for non-payment defaults. <u>See</u> <u>Disclosure Statement, Section 6.18</u>. The Debtor cannot unilaterally modify the Bank's rights and remedies under its loan documents.[10]

  **II.**  **The Joint Plan Engages in the Artificial Impairment of Claims Designed to Obtain the Acceptance of an Impaired Class of Claims under Section 1129(a)(10) of the Code**:

  19.  In order to confirm a Plan the Code requires a plan proponent to obtain the acceptance of at least one impaired class of claims. <u>See</u>, section 11129(a)(10). Under the solvent debtor exception, general unsecured debtors have an equitable right to postpetition interest under section 1124(1) of the Code when the Debtor is solvent. <u>In re Mullins</u>, 633 B.R. 1, 10-11 (Bankr. D. Mass. 2021).

  20.  Here, the Joint Plan fails to pay Class 5 General Unsecured Claims postpetition interest even though the Debtor's bankruptcy schedules show only $51,206.95 in general

---

[9] During the parties' conference on January 2, 2024 the parties made progress on resolving this objection subject to appropriate drafting language.

[10] During the parties' conference on January 2, 2024 Debtor's counsel informed counsel to the Bank that he would amend the Plan such that the grace periods set forth in the Bank's loan documents would remain in full force and effect.

10

unsecured claims (Dkt. #24). These facts suggests that the Debtor has designated Class 5 General Unsecured Claims as "Impaired" solely designed to obtain the acceptance of an impaired class of creditors under section 1129(a)(10).

### III. The Plan Unfairly Discriminates Against the Class 6 General Unsecured Class:

21. The Joint Plan it improperly creates a separate Class 4 for the unsecured claim of QS (the holder of an unsecured claim) from the Class 6 General Unsecured Claims and unfairly discriminates against the latter by proposing to pay interest to Class 4 but not to Class 6 claims.

### Reservation of Rights:

22. The Bank reserves the right to identify additional objections to confirmation of the Joint Plan under section 1129 of the Code.

### Compliance with MLBR 3017-1(b):

23. In accordance with MLBR 3017-1(b) counsel to the Bank conferred with Debtor's counsel by phone on Tuesday, January 2, 2024 to discuss the Bank's objections to the Disclosure Statement. The results of those discussions are set forth in footnotes 1-4, 6, 9-10 in this Objection.

033068/0125/4870-3247-7330.2

WHEREFORE, Country Bank For Savings requests the entry of an order denying the Motion and for such other and further relief as the Court deems just and proper.

        COUNTRY BANK FOR SAVINGS

        By Its Attorney,

        */s/ Mark W. Powers*
        Mark W. Powers (BBO #555337)
        BOWDITCH & DEWEY, LLP
        311 Main Street
        P.O. Box 15156
        Worcester, MA 01615-0156
        Telephone: 508-926-3416
        Facsimile: 508-929-3116
        E-mail: mpowers@bowditch.com

Dated: January 2, 2024

CERTIFICATE OF SERVICE

    I certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 2, 2024.

                */s/ Mark W. Powers*
                Mark W. Powers

033068/0125/4870-3247-7330.2